United States District Court
Southern District of Texas
ENTERED
July 16, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED
July 15, 2020
David J. Bradley, Clerk of Court

| | |
|---|---|
| BOLLINGER AMELIA REPAIR, LLC, § § Plaintiff, § § VS. § § BOUCHARD TRANSPORTATION CO., § INC., *et al*, § § Defendants. § | CIVIL ACTION NO. 2:19-CV-00370 |

# MEMORANDUM AND RECOMMENDATION

In December 2019, Plaintiff Bollinger Amelia Repair, LLC ("Bollinger") initiated this action seeking an attachment of the Barge B No. 240 under the court's admiralty jurisdiction, naming Defendant Bouchard Transportation Company, Inc. ("Bouchard") as defendant. Subsequently, Novum Energy Trading Inc. ("Novum") moved to intervene with claims *in rem* against both the Barge B No. 240 and its dedicated tug, the *M/V Barbara E. Bouchard*. Tugz Company LLC ("Tugz") and Steelstran Industries, Inc. ("Steelstran") have also intervened with claims against both the barge and the tug. (D.E. 73).[1] Bollinger has moved for an interlocutory sale of the Barge B No. 240, which has been joined by Novum and Tugz. (D.E. 58, 64, 74). Novum has moved for an interlocutory sale of the *M/V Barbara E. Bouchard*, which has been joined by Tugz.

---

[1] Specifically, Tugz has claims against both the barge and the tug, while Steelstran has a claim only against the tug. (D.E. 73 at 1).

(D.E. 65).[2]  For the reasons discussed further below, it is recommended that both motions (D.E. 58, 65) be **GRANTED** and that the Court schedule a sale for no less than 60 nor more than 90 days following the date of the order.

## I.   LEGAL STANDARD

A court may order all or part of a vessel sold if: (1) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (2) the expense of keeping the property is excessive or disproportionate; or (3) there is an unreasonable delay in securing release of the property. Fed. R. Civ. P., Supp. Adm. R. E(9)(a)(i).  The party seeking a sale must only show that one of these conditions is met. *Seatrade Grp. N.V. v. 6,785.5 Tons of Cement*, No. Civ.A. H05-2771, 2005 WL 3878026 at *4 (S.D. Tex. Dec. 7, 2005) (*citing Silver Star Enters., Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1014 (5th Cir. 1994).  Even if the conditions are met, an interlocutory sale is not mandatory, and the court retains considerable discretion in deciding what factors to consider.  *United States v. Approx. 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009); *Triton Container Intern. Ltd. v. Baltic Shipping Co.*, 1995 WL 217483 (E.D. La. 1995).

There are differing views regarding the proper standard to evaluate whether the expense of keeping a vessel is excessive or disproportionate.  Some courts measure the expense against the amount sought by the plaintiff.  *See John W. Stone Oil Distrib., L.L.C. v. M/V LUCY*, No. 09–4440, 2009 WL 4166605, at *2 (E.D. La. Nov.20, 2009).

---

[2] Tugz and Steelstran indicated on the record at the July 14, 2020, motion hearing that they intended to join the motions.

Others focus on whether the expense is excessive relative to the total value of the vessel. *See Adams Offshore, Ltd. v. Con–Dive, LLC*, No. 09–0378–WS–B, 2010 WL 433676, at *1 (S.D. Ala. Feb.1, 2010). In a case from this district, a magistrate judge concluded that the expense of keeping a vessel was not excessive where the monthly expenditure was $18,000, the total value of the claim was $859,100, and the value of the vessel was $32.5 million. *La. Intern. Marine, LLC v. Drilling Rig ATLAS CENTURY*, C.A. No. C-11-186, 2011 WL 7637219 at *2 (S.D. Tex. Nov. 21, 2011). The District Court adopted this recommendation. *La. Intern. Marine, LLC v. Drilling Rig ATLAS CENTURY*, C.A. No. C-11-186, 2012 WL 1067239 at *2 (S.D. Tex. Nov. 21, 2011).

Although there is no bright-line rule regarding how much time must pass before unreasonable delay occurs, vessel owners are typically afforded approximately four months to bond a vessel. *See M/V LUCY*, 2009 WL 4166605 at *1 (collecting cases). A delay beyond four months may nonetheless be reasonable if the owner is taking active measures to secure the release of the vessel. *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO, In Rem*, No. Civ.A. 02-0658, 2002 WL 31654846 at *2 (E.D. La. Nov. 22, 2002).

## II. DISCUSSION

### a. Barge B No. 240

Bollinger first contends that the cost of keeping the Barge B No. 240 is excessive or disproportionate because the wharfage fee is around $14,430 per month. (D.E. 58 at 3-4). Second, Bollinger argues that Bouchard has unreasonably delayed obtaining a release of the barge because, despite being arrested almost seven months ago, there is no

3

indication that Bouchard has made any attempt to obtain a bond or other form of security to obtain a release of the vessel. (*Id.* at 4).

Bouchard responds that the costs of keeping the barge are not excessive relative to either Bollinger's $1,119,752.81 claim or the Plaintiffs' combined claims of $4,362,204.71. (D.E. 69 at 4-5). As to unreasonable delay, Bouchard argues that there is no bright-line rule for when a delay in securing release becomes unreasonable and that, by participating in the litigation and settlement discussions, it has actively sought the release of the vessel. (*Id.* at 5-7).

Here, Bollinger has established that an interlocutory sale is appropriate on the basis of undue delay. However, Bollinger has not established that the costs of keeping the barge are excessive or disproportionate based on either the value of the claims or the value of the vessel. For the reasons discussed in *La. Intern.*, a monthly expenditure of $14,430 is not excessive relative to a claim totaling $1,119,752.81 or a vessel worth $1,500,000.[3] *See La. Intern.*, 2011 WL 7637219 at *2. In that case, the monthly expenditure was higher and the value of the claim was lower than here, but the Court nonetheless concluded that the expense was not excessive or disproportionate.

Regardless, Bollinger must only establish one of the three conditions in Rule E(9), and it has demonstrated an unreasonable delay in seeking release of the vessel, particularly in light of the significant, although not excessive, costs of keeping the vessel

---

[3] It is also worth noting that the combined value of the claims for all plaintiffs is $4,362,204.75, and the combined estimated fair market value for the barge and tug combined is between $4.5 million and $5 million. Novum's expert testified to this valuation at the July 14, 2020, hearing.

4

under arrest.  The Barge B No. 240 was arrested over seven months ago and Bouchard has not yet obtained, or sought to obtain, its release.  This is well past the typical four-month grace period.  *See M/V LUCY*, 2009 WL 4166605 at *1 (collecting cases).  While the four-month time period is not a bright-line rule, Bouchard has not identified any reason why its delay, which is approaching twice as long, is unique or should not be subject to the typical timeframe.

Further, Bouchard has not shown that it is or has been taking active measures to secure the release of the vessel.  *See Boland*, 2002 WL 31654846 at *2.  Bouchard states that it is in the process of completing a recapitalization plan, but it said the same in February 2020 when the undersigned denied Bollinger's first motion for an interlocutory sale.  (*See* D.E. 34 at 10; D.E. 69 at 7).  Bouchard stated that this plan was in its "final stage" in February 2020 but does not provide any update or evidentiary support regarding how the plan has advanced in the last five months or why the company remains unable to seek a release of the vessel.  (*See* D.E. 34 at 10).  Lastly, to the extent that Bouchard argues that it has actively sought release of the vessel by participating in settlement negotiations, those negotiations have thus far been unsuccessful and there are no details regarding those negotiations beyond counsel's conclusory statement in a declaration that Bouchard made "a substantial and good faith offer to settle."  (D.E. 69-2 at 1). Accordingly, given the now seven-month delay in seeking a release of the vessel on bond and the significant costs of keeping the vessel under arrest, Bollinger has met its burden to show that there has been an unreasonable delay in securing the release of the property.

### b. M/V Barbara E. Bouchard

Novum first contends that that the cost of keeping the M/V Barbara E. Bouchard is excessive or disproportionate because the wharfage fee is around $3,630 monthly, in addition to the $14,430 monthly expense of keeping the Barge B No. 240 under arrest. (D.E. 65 at 3). Second, Novum argues that Bouchard has unreasonably delayed obtaining a release of the barge because, despite being arrested almost seven months ago, there is no indication that Bouchard has made any attempt to obtain a bond or other form of security to obtain a release of the vessel. (*Id.* at 3-4). Novum also notes that it is imperative to sell the barge and tug together because they are designed to work together. (*Id.* at 4-5). Finally, Novum asserts that the M/V Barbara E. Bouchard is perishable or liable to deterioration while in custody because it is now hurricane season. (*Id.* at 5-6).

Bouchard raises the same arguments as in its response to Bollinger's motion. (*See* D.E. 76).

Here, the analysis of Novum's motion is the same as the above analysis of Bollinger's motion. Although the costs specifically to keep the *M/V Barbara E. Bouchard* are only $3,630 a month, it is undisputed that the tug is part of a unit with the barge, which costs $14,430 per month to hold under arrest. Thus, it would be inappropriate to consider the cost of keeping the tug in isolation from the cost of keeping the barge. However, even an aggregation of these two costs results in a total of only $18,060 per month, which does not change the excessive-cost analysis from above. Similarly, the unreasonable-delay analysis for the barge is identical for the tug, as both have been arrested for the same amount of time and Bouchard has taken no additional

steps to secure release of the tug nor raised any additional arguments in its response.

Because movants need only show one factor, the undersigned does not draw a conclusion on Novum's argument that the *M/V Barbara E. Bouchard* is perishable or liable to deterioration.

### III. RECOMMENDATION

Accordingly, it is recommended that both motions for interlocutory sale (D.E. 58, 65) be GRANTED and that the Court schedule a sale of the *M/V Barbara E. Bouchard* and the Barge B N. 240, as a unit,[4] no less than 60 nor more than 90 days following the date of the order.

Respectfully submitted this 15th day of July, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

---

[4] All parties agreed on the record at the July 14, 2020, hearing that, if the motions are granted by the Court: (1) the tug and barge should be sold as a unit, (2) the minimum acceptable bid should be set by the Court at $4,750,000, and (3) that credit bids not be accepted by the Court.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).